UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AUDELINA MARTINEZ,
    Plaintiff,

Civil No. 05-437-HA

v.

OPINION AND ORDER

MARY'S WOODS AT MARYLHURST,
INC., an Oregon Corporation, and DAN FINK,
    Defendants.

HAGGERTY, Chief Judge:

Plaintiff Audelina Martinez and co-defendant Dan Fink are both Certified Nursing Assistants (CNAs) employed by defendant "Mary's Woods at Marylhurst" (MW), a not-for-profit continuing care retirement community in Lake Oswego, Oregon. In this action plaintiff alleges that co-defendant Fink and other employees engaged in a persistent pattern of severe and pervasive harassment against plaintiff, involving assault and battery, offensive words, and defamatory comments, all of which created a hostile work environment for plaintiff.

Page 1    Opinion and Order

Plaintiff's first claim alleges gender harassment or discrimination under 42 U.S.C. § 2000e-2(a) (Title VII), which prohibits discrimination in employment on the basis of race, color, religion, gender or national origin. Plaintiff's Title VII claim is brought against MW only, and is premised upon a hostile workplace theory, discussed below. Plaintiff contends that she suffered gender harassment that was so pervasive that MW should be charged with constructive notice of it.

Plaintiff's second claim alleges intentional infliction of emotional distress against Fink, whose actions plaintiff alleges were extreme, outrageous, and done recklessly or with the intent to cause plaintiff emotional distress. Plaintiff also asserts that MW should be liable for intentional infliction of emotional distress under a *respondeat superior* theory, because MW "ratified" Fink's unprovoked assault upon plaintiff.

**PENDING MOTION**

Defendants move for summary judgment. As to the Title VII claim, defendants argue that MW is entitled to summary judgment because (1) the evidence is insufficient to establish that Fink's conduct occurred because of plaintiff's gender; (2) the alleged conduct was insufficiently severe as to create a hostile work environment; (3) the conduct was insufficient to place MW on notice of a hostile work environment; and (4) the evidence precludes any conclusion that MW failed to take appropriate corrective action.

Defendants seek summary judgment on plaintiff's second claim for intentional infliction of emotional distress on grounds that Fink's conduct did not transgress all bounds of socially tolerable behavior; the evidence is insufficient to establish that defendants intended to inflict severe emotional distress, and MW cannot be liable under "ratification" theories.

Oral argument on this motion was heard on May 12, 2006. For the following reasons, defendants' motion is granted.

## STANDARDS

**1.    SUMMARY JUDGMENT STANDARDS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630

(9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id*. At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id., see also Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

## 2.   STANDARDS FOR UNLAWFUL GENDER HARASSMENT CLAIMS

As noted above, Title VII prohibits discrimination in employment on the basis of race, color, religion, gender or national origin. 42 U.S.C. § 2000e-2(a). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986) (citations omitted). However, virtually no legislative history provides guidance to courts interpreting the prohibition of sex discrimination. *Id*. at 64; *see also Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991).

> Sexual harassment is a species of gender discrimination: Harassing an employee on account of sex is, conceptually, the same as refusing to hire on account of sex, or paying less for the same work, or imposing more onerous duties for the same pay. In each such case, the employer violates Title VII by offering terms and conditions to employees of one gender that are less favorable than those it offers to employees of the other gender. Sexual

>  harassment, if committed or tolerated by the employer, becomes a
>  new and onerous term of employment.

*Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

Courts have recognized that to establish a harassment claim under Title VII, a plaintiff must show discrimination "because of" his or her gender or race. *Fitzer v. Chevron Corp.*, 2006 WL 462552, *3 (E.D.Cal. February 27, 2006) citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80-81 (1998).

Moreover, a plaintiff must demonstrate that the discrimination was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive working environment. *Id.*, citing *Meritor Savings Bank*, 477 U.S. at 67; *Vasquez v. Co. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004). Accordingly, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *see also Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005).

Determining whether the complained-of conduct was sufficiently severe or pervasive to alter employment conditions and create an abusive work environment requires an employee to show both subjective and objective hostility in the workplace. *See Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)

The Ninth Circuit has provided some parameters as to what constitutes an objectively abusive environment. Allegations of persistent physical conduct or assault of an invasive, sexual

nature may support a finding of an objectively abusive environment. *See, e.g., Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1064 (9th Cir. 2002); *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1478 (9th Cir. 1997)( rape). Explicitly sexual language or conduct also usually supports such a finding. *See, e.g., Montero v. Agco Corp.*, 192 F.3d 856, 859 (9th Cir. 1999); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105-06 (9th Cir. 1998).

On the other hand, the Ninth Circuit has held that repeated "gender derogatory language" directed primarily toward other employees, coupled with some retaliatory conduct, failed to raise a genuine issue as to the existence of an objectively hostile environment. *Kortan v. Calif. Youth Auth.*, 217 F.3d 1104, 1108-111 (9th Cir. 2000).

The offensive conduct in question here does not appear to have been motivated by sexual desire on the part of Fink, but sexual desire is not a prerequisite to liability under Title VII. *See Oncale*, 523 U.S. at 80 ("harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex" ). While gender-specific content is one way to establish discriminatory harassment, "direct comparative evidence about how the alleged harasser treated members of both sexes" is also an available evidentiary route. *E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844 (9th Cir. 2005), quoting *Oncale*, 523 U.S. at 80-81. "The ultimate question in either event is whether 'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.*, citing *Oncale*, 523 U.S. at 80 and quoting *Harris*, 510 U.S. at 25 (Ginsberg, J., concurring).

"Unlike a Title VII claim that is based on discrete acts of discrimination, a hostile work environment claim is based upon the cumulative effect of individual acts that may not themselves be actionable." *Jamal v. Wilshire Management Leasing Corp.*, 320 F. Supp.2d 1060,

1081 (D. Or. 2004), citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002). A proper evaluation of the possible cumulative effect compels a court to examine "all the circumstances, including: frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*, citation omitted; *see also Galdamez*, 415 F.3d at 1023 (objective hostility is measured by examining the frequency, severity, and nature of the complained-of conduct), citing *Vasquez*, 349 F.3d at 642.

Accordingly, less severe hostile conduct may nevertheless support this kind of claim if there is sufficient evidence of the frequency and pervasiveness of the conduct; *i.e.*, the required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.  *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) (citation and internal quotation marks omitted).

Conversely, evidence of "two regrettable incidents" involving mockery of an Asian employee, "coupled with . . . other offhand remarks made by [the plaintiff's] co-workers and supervisor, did not alter the conditions of [the plaintiff's] employment" because the incidents occurred over a span of two-and-a-half years.  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 799 (9th Cir. 2003).  The Ninth Circuit noted that "[i]f these actions had occurred repeatedly, [the plaintiff] may very well have had an actionable hostile environment claim."  *Id.*, citing *Brooks*, 229 F.3d at 926.

In cases in which evidence of objective abusiveness raises a triable issue, then the court examines whether evidence could support the conclusion that the plaintiff experienced a subjectively abusive work environment.  A plaintiff's subjective experience need not be so severe

Page 7    Opinion and Order

as to cause "diagnosed psychological injury," but the environment must increase the difficulty of performing the plaintiff's job, taking pride in the work, and maintaining a desire to stay in the position. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994).

If a plaintiff has shown subjective and objective hostility in the workplace sufficiently severe or pervasive to create an abusive work environment, then the plaintiff must establish that his or her employer ratified or knew or should have known about the environment and failed to take action or took insufficient action in response to it. *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001). In the absence of (1) any notice of actionable sexual harassment to the employer, and (2) any deficient response by the employer, an employer is not liable for harassment by a coworker of the plaintiff. *Id*. at 1191-92, citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 759 (1998).

Plaintiff's pleadings are unclear as to whether plaintiff intended to assert a gender discrimination claim against MW that would stand separately from her harassment allegations. To prevail on a Title VII discrimination claim, a plaintiff must establish a *prima facie* case of discrimination. *Vasquez*, 349 F.3d at 640. A *prima facie* case can be established with direct or circumstantial evidence of discriminatory intent, or by showing (1) the plaintiff belongs to a protected class, (2) the plaintiff was performing according to the employer's legitimate expectations, (3) the plaintiff suffered an adverse employment action, and (4) other employees with qualifications similar to plaintiff's own were treated more favorably. *Id*. at 640, n. 5; *see also Jespersen v. Harrah's Operating Co., Inc.*, 2006 WL 962533, *4 (9th Cir. April 16, 2006) (a plaintiff asserting gender discrimination must make out a *prima facie* case establishing that a challenged employment action was either intentionally discriminatory or that it had a

discriminatory effect on the basis of gender), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Once a plaintiff establishes such a *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell*, 411 U.S. at 802.

Regardless of the types of claims plaintiff intended to assert, it must be emphasized that Title VII is not a "fault-based tort scheme" but is instead aimed at the consequences or effects of *an employment practice*, not at the motivations of co-workers. *Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 844-45, quoting *Ellison*, 924 F.2d at 880 (emphasis added).

**RELEVANT BACKGROUND**

Plaintiff alleges that during the month of December 2003 she reported to her supervisors that co-defendant Fink was neglecting patients by failing to monitor and change their diapers. During approximately the same time, co-defendant Fink allegedly asked plaintiff, who is Hispanic, two or three times whether plaintiff knew what the term "beaner" meant. Plaintiff testified that she did not know then that the term was racially derogatory.

On January 3, 2004, Fink allegedly confronted plaintiff during a shift-change. He complained that her insistence upon checking the resident-patients' diapers more frequently than the standard two-hour cycle constituted "patient abuse."

Plaintiff alleges that during this confrontation Fink grabbed her wrists and shook her to prevent her from examining a patient. Both Fink and plaintiff subsequently filed administrative complaints against each other.

Plaintiff underwent medical examinations of her wrists and later called the police about co-defendant Fink's assault. She avers that subsequently she was subjected to some mockery and ridicule from co-workers, and that she felt uncomfortable working near Fink.

Defendant MW investigated the complaints filed by plaintiff and co-defendant Fink within three weeks of the assault. Defendant MW determined that disciplinary action was unwarranted regarding either complaint. No other complaints have been received since that occurrence. Plaintiff also alleges that in March 2004 another co-worker, Jessica Rook, made similar complaints about an employee's neglect of patients, which resulted in that employee being terminated, and presents claims that Fink has been confrontational to another Hspanic female co-worker.

## ANALYSIS

    A.    Title VII Claim

Defendant first argues that however unpleasant Fink's alleged treatment of plaintiff may have been, there is no evidence that any of his animus toward her was related to her gender. Their encounter in which Fink allegedly grabbed plaintiff's wrists related to Fink's alleged protest of plaintiff's inspections. No evidence is presented that their dispute involved plaintiff's gender in any aspect. Plaintiff recalled only one derogatory comment uttered by Fink that could be construed as gender-related – he allegedly called her a "fucking bitch" at some point after they argued about plaintiff's diaper inspections.

Although the term "bitch" has a gender-specific connotation, this connotation is not so strong as to establish that Fink, by uttering the word, harassed plaintiff "because of" her gender. *Fitzer*, 2006 WL 462552, at *4, citing *Galloway v. General Motors Service Parts Operations*, 78

F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by Morgan*, 536 U.S. 101 (calling someone a "bitch" fails to establish conclusively that such harassment "was motivated by gender rather than by a personal dislike unrelated to gender"); *Kriss v. Sprint Commc'ns Co., Ltd. P'ship*, 58 F.3d 1276, 1281 (8th Cir. 1995) (the word "bitch" fails to indicate "a general misogynist attitude," and is not "particularly probative of gender discrimination").

As in *Fitzer*, plaintiff here fails to present any other evidence demonstrating that she was harassed or suffered other "differential treatment" because of her gender. There is no evidence that Fink's alleged inquiries about the term "beaner" and the possible ridicule plaintiff may have suffered after her altercation with Fink were related to plaintiff's gender. Accordingly, summary judgment must be granted to MW on Plaintiff's Title VII gender harassment claim. *Fitzer*, 2006 WL 462552, at *4, comparing *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737 (8th Cir. 2000) (no genuine issue of material fact as to whether the plaintiff was harassed because of her gender where plaintiff presented nothing more than evidence she was called a "bitch"), with *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 862 (9th Cir. 2002) (issue of fact raised as to whether the plaintiff was harassed because of her gender where the plaintiff was called a "bitch" and she presented evidence of other differential treatment).

Assuming *arguendo* that plaintiff also presented adequate evidence of differential treatment, and that this treatment was gender-related, the circumstances of plaintiff's work environment – viewed in a light favorable to plaintiff's suit – fall short of being sufficiently severe or pervasive to have altered the conditions of plaintiff's employment. Plaintiff's primary gender-related allegation against Fink consists of a single physical confrontation. "If a single incident can ever suffice to support a hostile work environment claim the incident must be

Page 11   Opinion and Order

extremely severe." *Brooks*, 229 F.3d at 926, citation omitted.  Fink's conduct falls short of this stringent test.

No reasonable juror could conclude that plaintiff's allegations of a confrontation with a co-worker that culminated in her wrists being grabbed, and being the recipient of a single utterance of the derogatory term "fucking bitch," is so severe and abusive enough as to have altered plaintiff's work environment.

The evidence presented by plaintiff falls far short of the severity of conditions in cases where courts have allowed hostile work environment claims to proceed.  *See, e.g., Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (finding hostile work environment where employer verbally and physically abused plaintiff because of his race); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872-73 (9th Cir. 2001) (finding a hostile work environment where a male employee suffered abusive name-calling by co-workers and supervisors at least once a week and often several times a day); *Draper*, 147 F.3d at 1109 (finding hostile work environment because the plaintiff's supervisor made repeated sexual remarks to her).

The court notes that plaintiff's briefing in response to defendants' summary judgment motion refers to the possibility that Fink's animosity toward plaintiff may also be based upon plaintiff being Hispanic.  The suggestion of Fink's possible racist animus arises from plaintiff's deposition testimony that Fink asked her two or three times if she knew what "beaner" meant.

Plaintiff asserted no claims pertaining to race discrimination or harassment in her Complaint.  Even given this circuit's permissive approach to administrative exhaustion, if plaintiff's original Equal Employment Opportunity complaint similarly omitted any references to racial harassment or gender discrimination, this court cannot consider new race-based claims

unless they could be construed as similar to or reasonably related to plaintiff's gender discrimination allegations. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (court examining an administrative charge must construe the allegations with liberality because claims are made by those unschooled in the technicalities of formal pleading); *see also Fitzer*, 2006 WL 462552 at *3.

If a plaintiff *pleads* both gender and race discrimination, a court should examine the evidence to determine whether the plaintiff has been subjected to discrimination on the combined bases of race and gender. *See Anthony v. Co. of Sacramento*, 898 F. Supp. 1435, 1444 (E.D. Cal. 1995). Here, plaintiff has failed to plead her race as a possible source of improper conduct from defendants. However, even if race discrimination claims were properly before the court, plaintiff's reference to two or three racially derogatory inquiries from Fink is insufficient to establish a hostile work environment pertaining to gender, race, or a combination of the factors.

The "mere utterance of an epithet which engenders offensive feelings in an employee" fails to create an objectively hostile or abusive work environment. *Fitzer*, 2006 WL 462552, *5, quoting *Harris*, 510 U.S. at 21, and citing *Vasquez*, 349 F.3d 634 (a supervisor who used two "racially-related epithets" did not create a hostile or abusive work environment).

Plaintiff's Title VII claim compels this court to examine whether plaintiff suffered a hostile work environment or discrimination because of her gender, or, construing her pleadings broadly enough to encompass a race discrimination claim, because of her gender and race. The Supreme Court recognizes that the "standards for judging hostility [must be] sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. Boca*

*Raton*, 524 U.S. 775, 788 (1998), quoting *Oncale*, 523 U.S. at 75.  Accordingly, "conduct must be extreme" to create an objectively hostile work environment.  *Id*.  Such standards "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Id*., (internal quotations and citations omitted); *see also Fitzer*, 2006 WL 462552, at *5.

These standards preclude plaintiff from advancing her Title VII claim as presented.  There is no dispute that Fink's alleged assault was motivated by plaintiff's insistence on inspecting patients' diapers and her disagreement with Fink about patient care, *not* plaintiff's gender.  Plaintiff's reference to stray circumstances such as a brief delay in MW's investigation of the co-workers' dispute, hearing mild ridicule by co-workers after plaintiff telephoned the police regarding Fink, Fink's utterance of a gender-derogatory remark against plaintiff, and Fink's boorish inquiries to plaintiff about the term "beaner" fails to satisfy the "severe and pervasive" standard required for Title VII hostile work environment claims.

Plaintiff also fails to establish that MW "should have known" that plaintiff's work environment was abusive.  First, this court has concluded that plaintiff's work environment was not sufficiently hostile.  "A finding of discrimination is required before a failure to investigate a discrimination complaint would become actionable."  *Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004).

Moreover, the evidence presented establishes defendant MW acknowledged plaintiff's incident report regarding her confrontation with Fink and conducted an investigation.  No other reports were received by MW regarding Fink or describing negative conduct within plaintiff's work environment that could be construed as pervasive.  Although courts have recognized that

sufficient notice may arise from "widespread sexual harassment in the office place," plaintiff presents no evidence of this kind of harassment. *See Hirase-Doi v. U.S. West Commc'ns,, Inc.*, 61 F.3d 777, 783 (10th Cir. 1995).

Assuming without deciding that an actionable hostile environment existed, and that notice should be imputed to MW, MW's responses to plaintiff's workplace problems were appropriate. Plaintiff acknowledges that MW personnel met with plaintiff and two co-workers within two or three weeks after the confrontation and discussed the co-workers' conduct towards plaintiff after plaintiff called the police about Fink. Defendant MW also investigated the complaints filed by plaintiff and Fink promptly, interviewed co-workers who were present during the conflict, and made a reasonable determination that action at that time was unwarranted. No further complaints were filed against Fink. Plaintiff presents no evidence that MW ignored complaints about Fink's behavior or in any way retaliated against any complainants. A reasonable jury could not find that MW's investigation and response fell short of the action an employer must take to avoid Title VII liability. *Swenson*, 271 F.3d at 1192; *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968-69 (9th Cir. 2002) (finding actionable hostile work environment where employer failed to respond to multiple complaints).

The court next resolves any possible discrimination claims against MW that plaintiff might have been intended to stand independently from her harassment claims. At oral argument plaintiff's counsel clarified that plaintiff did not suffer a constructive discharge and that she was not advancing any such claim. This court's examination of the record finds no other grounds for concluding that plaintiff has suffered an adverse employment action. Any alleged "failure to be protected from harassment cannot serve as the basis for an adverse employment action" in cases

Page 15    Opinion and Order

in which the plaintiff cannot establish a *prima facie* case of harassment. *Fitzer*, 2006 WL 462552, at *7, citing *Trujillo v. North County Transit Dist.*, 63 Cal. App.4th 280, 289 (1998).

This court concludes that plaintiff has failed to allege facts that establish as a matter of law that her encounters with Fink and the other alleged circumstances at work were sufficiently severe or pervasive to alter her conditions of employment and create an abusive working environment. Viewing the evidence in the light most favorable to plaintiff's claims, Fink's conduct, although offensive and inappropriate toward plaintiff and others, did not impact plaintiff's workplace to a degree sufficient to alter the conditions of her employment.

Even assuming *arguendo* that plaintiff's work environment could somehow be construed as abusive, this court would conclude that the evidence in the record indicates that MW took adequate steps to address plaintiff's concerns about Fink. Defendant MW conducted reasonably prompt investigations of Fink's altercation with plaintiff as well as the subsequent critical behavior of co-workers. Defendants' Motion for Summary Judgment on plaintiff's hostile work environment claim is granted.

   B.  Intentional Infliction of Emotional Distress Claim

Defendants also seek summary judgment on plaintiff's intentional infliction of emotional distress claim, arguing that (1) the conduct plaintiff endured did not transgress all bounds of socially tolerable behavior; (2) the evidence is insufficient to establish that defendants intended to inflict severe emotional distress; (3) defendants' conduct did not cause plaintiff severe emotional distress, and (4) MW cannot be liable under "ratification" theories.

To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the

Page 16  Opinion and Order

defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Babick v. Oregon Arena Corp.*, 40 P.3d 1059, 1063 (Or. 2002), citing *McGanty v. Staudenraus*, 901 P.2d 841 (Or. 1995) and quoting *Sheets v. Knight*, 779 P.2d 1000 (1989). Whether conduct is an extraordinary transgression is a fact-specific inquiry that considers the totality of the circumstances. *Rosenthal v. Erven*, 17 P.3d 558, 560 (Or. App. 2001) (citation omitted). Courts consider whether the offensiveness of the conduct at issue exceeds any reasonable limit of social toleration – a test that evaluates social standards, not specific occurrences. *Id*., citation and internal quotation omitted.

An essential element of the tort of intentional infliction of emotional distress is that the injured person in fact suffer distress. *Barrington ex rel. Barrington v. Sandberg*, 991 P.2d 1071, 1074 (Or. App. 1999). Plaintiff's responsive brief to defendants' motion addresses only the question of whether Fink's actions should be construed as an extraordinary transgression of the bounds of socially tolerable conduct. Accordingly, plaintiff's position must be construed as conceding defendants' lack of intent and plaintiff's lack of evidence regarding whether severe emotional distress was inflicted.

Moreover, this court concludes as a matter of law that plaintiff's allegations regarding this claim – a single physical confrontation, co-worker mockery, two or three incidents of inquiries that plaintiff only later learned were racist, and one reference to being called a "fucking bitch" – fail to describe conduct that is outrageous in the extreme.

Fink allegedly asked plaintiff three times if she knew what "beaner" meant. Plaintiff testified that she did not know. This reduces significantly any emotional distress these inquiries

Page 17     Opinion and Order

could have caused plaintiff. Though boorish and racist, repeated references to a term that plaintiff found obscure fails to constitute socially intolerable behavior.

Similarly, this court concludes that one reference to plaintiff being called a "fucking bitch," and one incident of physical intimidation, though rude and unpleasant, fails to amount to socially intolerable behavior sufficient for establishing an intentional infliction of emotional distress claim. Accordingly, defendant Fink is also entitled to summary judgment on plaintiff's intentional infliction of emotional distress claim. Because Fink's conduct failed to constitute socially intolerable behavior sufficient for establishing an intentional infliction of emotional distress claim, and because there is no evidence that defendant MW intended to inflict severe emotional distress or that any workplace conduct caused plaintiff severe emotional distress, MW is granted summary judgment on this claim as well.

**CONCLUSION**

For the reasons provided, defendant's Motion for Summary Judgment [14] is granted in its entirety.

IT IS SO ORDERED.

DATED this   16   day of May, 2006.


                                                  /s/ Ancer L.Haggerty

                                                  Ancer L. Haggerty
                                                  United States District Judge